In the Matter of the Estate of CHARLES A. BLACK, Deceased.

Surrogate's Court, Niagara County, February 8, 1934.

*George M. Tuttle* [*W. Tobin Lennon* of counsel], for the claimant.

*Franchot, Runals, Cohen, Taylor & Rickert* [*Carleton Marvin* of counsel], for the administrator.

GOLD, S.  On the 30th day of October, 1930, Allie E. Black, wife of decedent, made application in writing to the commissioner of charities of the county of Niagara for old age relief.  After investigation, her petition was granted and there was paid to her the sum of nineteen dollars a month, beginning the 1st day of January, 1931, and ending the 20th day of May, 1932, a period of seventeen months, the total payment amounting to $323.

Said Allie E. Black was the wife of Charles A. Black and resided with him in the city of Niagara Falls, N. Y.  There was no one liable for her support except her said husband.

On the 25th day of May, 1932, said Charles A. Black died, and Charles H. Black was duly appointed administrator of his estate by the Surrogate's Court of Niagara county.  At the time of his death there was paid to his estate $1,500 insurance, the proceeds of a group insurance policy issued to the Niagara Falls Power Company upon its employees.  This was the only asset of the estate.

During all of the time that payment was made to said Allie E. Black, neither she nor her husband, Charles A. Black, had any property or any income other than a pension paid to Charles A. Black by the Niagara Falls Power Company and such small amounts as he could earn in the performance of odd jobs.

After decedent's death, Charles W. Walker, commissioner of public welfare of Niagara county, filed a claim with the administrator of the estate of Charles A. Black, deceased. in the sum of $323, paid to his wife on old age pension, as mentioned aforesaid.

It is contended that he is entitled to the payment of said claim by virtue of the provisions of section 128 of the Public Welfare Law of this State, which reads as follows:

" § 128. Recovery from a person discovered to have property. A public welfare official may bring action against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received relief and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such relief. Any public relief received by such person shall constitute an implied contract."

He claims that Allie E. Black was one for whose support decedent was liable, as contemplated by said section. He further claims that the last sentence of said section, to wit, "Any public relief received by such person shall constitute an implied contract," is intended to cover just such a situation.

Section 128 of the Public Welfare Law superseded section 57 of the Poor Law, which said section read as follows:

" § 57. Recovery from pauper who has property. If it shall at any time be ascertained that any person, who has been assisted by or received support from any town, city or county, has real or personal property, or if any such person shall die, leaving real or personal property, an action may be maintained in any court of competent jurisdiction, by the overseer of the poor of the town or city, or the superintendent of the poor of any county which has furnished or provided such assistance or support, or any part thereof, against such person or his or her estate, to recover such sums of money as may have been expended by their town, city or county in the assistance and support of such person during the period of ten years next preceding such discovery or death."

Upon an examination of the two laws, it will be seen that the Legislature intended to broaden the right of the public welfare official to recover moneys which had been paid out for the support of those in need.

Prior to the passage of said Public Welfare Law in 1929 there were several decisions rendered determining the rights of the welfare official after aid had been given.

In *Matter of Humphries* (125 Misc. 62) the court held as follows: " The language of the statute imports that it is. the discovery of concealed assets that supports an action to enforce such a claim

" The mere fact that the county extended and the testatrix received care and support does not of itself predicate a liability against the estate."

In denying the claim of the city of Troy against the estate of Mary L. Carroll, Surrogate HEATON in 1907 (*Matter of Carroll*, 55 Misc. 496; affd., 127 App. Div. 932) stated (at p. 498): " If, then, there is no evidence that the deceased obtained help from the charity department of the city by any fraudulent act which has been proved to have been committed by her and which induced the city to grant her charity, then, under the decision in the case of *City of Albany* v. *McNamara* (117 N. Y. 168, 173) the claimant has not established a claim against the estate and cannot recover."

In *City of Albany* v. *McNamara* (*supra*) the court held: " The misjudgment of the officers of the poor as to the necessities of the person relieved raises no implied promise on the part of such person that he will repay moneys expended in his behalf."

Heavy demands have been made upon the relief departments of the State and local communities for aid during the past few years. Undoubtedly the Legislature had this in mind when it enacted section 128 of the Welfare Law. It broadened the powers of the welfare officers. It added, " or anyone for whose support he is or was liable," which was not contained in section 57 of the Poor Law. It also added, "Any public relief received by such person shall constitute an implied contract."

It is a fundamental principle of the law of the State of New York that the husband is liable for the support of his wife and the parties in this proceeding have stipulated that " there was no one liable for the support of Allie E. Black other than her husband, Charles A. Black." He was, therefore, liable for her support.

Inasmuch as said section 128 provides that any public relief received by such person shall constitute an implied contract, there was an implied contract for the repayment of the sum, provided the person was in a position to do so. It goes further and states that "A public welfare official may bring action against * * * the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person or anyone for whose support he is or was liable, received relief and care during the preceding ten years."

Prior to the enactment of the Public Welfare Law in 1929, an implied contract was not recognized from the fact that aid was furnished. Fraud in the concealment of property gave a right of action to the welfare department against the one perpetrating the fraud.

Section 128, above quoted, provides that there is an implied

contract for repayment as soon as relief is received.   In other words, the person asks for relief and relief is granted, which makes the contract complete.   The statute extends the right of recovery to the welfare department beyond tort actions into the realm of actions on contract.   If the person who receives the benefit therefrom becomes able to do so, he must repay the money.

The fact that the person had no money at the time the contract came into effect does not alter his liability to pay if he later has the money.   The statute must mean this, for the reason that if a person has property he does not ask for aid.   Therefore, it is not the man with property, but the man without property who asks and receives the same.

The claim of the claimant is hereby allowed.

Let a decree be entered accordingly.